## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Tina L. Valliere )<br>560 School Street )<br>Berwick, ME 03901, )<br>    Plaintiff )<br>)<br>v. )<br>)<br>Automotive Supply Associates, Inc. )<br>129 Manchester Street )<br>Concord, NH 03301, )<br>    Defendant ) | Case Number: |

## COMPLAINT AND JURY DEMAND

## PARTIES

1. Tina L. Valliere ("Ms. Valliere") is an individual residing at 560 School Street, Berwick, Maine.

2. Defendant Automotive Supply Associates, Inc. ("Automotive Supply") is a New Hampshire corporation with a principal address at 129 Manchester Street, Concord, New Hampshire.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the matter involves claims arising pursuant to and questions of federal law.

4. This action is commenced in the United States District Court for the District of New Hampshire pursuant to 28 U.S.C. § 1332, as the parties are citizens of diverse jurisdictions and the amount in controversy, exclusive of interests and costs, is in excess of Seventy-Five Thousand dollars ($75,000).

## FACTS RELEVANT TO ALL COUNTS

5. Ms. Valliere is female.

6. At the time of this filing she is fifty-two (52) years old.

7. She has worked in the autoparts/automotive industry for various NAPA auto parts stores for twenty-five plus (25+) years dating back to 1992.

8. Over this span of time, she was a retail Store Manager for approximately ten (10) years.

9. On or about June 1, 2018, Sanel Autoparts purchased the Somersworth NAPA store where Ms. Valliere was the Store Manager and formed the entity that is the defendant in this case.

10. The defendant retained Ms. Valliere as the Somersworth Store Manager.

11. Thereafter, as before, Ms. Valliere received employment performance reviews the majority of which were positive.

12. She received yearly raises.

### *Reported Sewage Overflow*

13. In June 2019, there was a sewage overflow in the Somersworth store she managed.

14. The location had floor tiles that deteriorated in the flooding.

15. The overflow caused them to become crumbled and cracked.

16. The remediation company advised that the tiles appeared to be asbestos.

17. It advised that they should be removed.

18. Ms. Valliere reported this immediately to her District Manager, Mr. Crippen ("Crippen") and to maintenance.

19. No one responded.

20. She repeated her concern by email to Crippen.

21. There again was no response.

22. Ms. Valliere then took it upon herself to send the tiles for testing.

23. This confirmed that they were asbestos.

24. She reported this in writing again to Crippen.

25. This time she also copied the Director of HR, Mr. Glendinning, and the Facilities Director, Mr. Graham.

26. In this communication, more than three (3) weeks from the sewage overflow, she explained that employees were very concerned and referenced they were mentioning reporting the situation to OSHA.

27. On June 29, 2019 the Company finally proposed a plan to remediate the problem part of which stated that it was "completely safe for [employees] to be working around" the broken asbestos tiles and directed the employees to move inventory from the area.

28. Since this direction—for employees to work around broken asbestos tiles—was contrary to what Ms. Valliere understood from the testing laboratory was safe, she requested something in writing confirming the safety of her employees.

29. It appears that these actions by Ms. Valliere angered Crippen and potentially others who, thereafter, retaliated against her.

*Meeting with Delafontaine*

30. Crippen was a direct report to Nick Nicholas, the Vice President of Operations, who, upon information and belief, had to approve all personnel decisions.

31. After the asbestos tile clean up, Crippen conducted a private meeting in Ms. Valliere's office with her Assistant Manager, Rob Delafontaine.

32. Shortly thereafter the Company, through Nicholas and Crippen, appointed Delafontaine as the Manager of the Dover store.

33. The Company's Employee Handbook required that the Company post management positions for all employees to potentially apply.

34. The Company never posted this Dover store position.

### *Denied New Position*

35. On December 11, 2019 Crippen advised Ms. Valliere of further changes to the terms and conditions of her employment.

36. Crippen explained that as of December 27, 2019 the Company was merging two existing markets, Dover and Somersworth, into one District.

37. He advised that Delafontaine would be the District store manager responsible for overseeing both the Dover and Somersworth stores.

38. This meant that Ms. Valliere was no longer the Somersworth store manager.

39. The Company did not post this position pursuant to its Employee Handbook policy.

40. Ms. Valliere asked Crippen why the Company chose a newly appointed Store Manager with far less experience and training to this position instead of her.

41. Crippen responded that it was because Delafontaine was younger and would be with the Company longer.

42. Ms. Valliere identified this as age discrimination.

43. Crippen then backpedaled.

44. He said that the Company chose Delafontaine because he earned less than Ms. Valliere.

45. Upon information and belief, Mr. Delafontaine's salary was the same or only slightly less than Ms. Valliere.

46. That evening, Ms. Valliere notified the Company in writing that she would take the newly formed District Store Manager position even if it meant taking an alleged pay cut in the amount that allegedly was Delafontaine's lesser salary.

47. The Company responded, consistent with what Crippen had stated, that "long-term this would not be a good situation."

48. The words "long-term" were again a reference to Ms. Valliere's age.

49. The Company offered Ms. Valliere a position in Concord or Derry each of which it knew was more than fifty (50) miles from her home (more than a 100-mile roundtrip).

50. It claimed that it needed Ms. Valliere at one of these other locations because their volume could justify her salary.

51. This was false.

52. The identified stores actually did lower volume than the newly formed Somersworth/Dover market.

53. The Company also advised Ms. Valliere that if she declined to accept this change in the terms and conditions of her employment, one option was that the Company would terminate her employment.

### *Filed Charge With NH Human Rights Commission*

54. On December 13, 2019 Ms. Valliere filed a Charge with the New Hampshire Human Rights Commission identifying claims of, <u>inter alia</u>, age discrimination, sex-based discrimination, and retaliation.

55. She tried to return to work.

56. She received communication from other Company employees advising her of Delafontaine's promotion.

57. She received text messages from one of her Assistant Store Managers advising that Delafontaine was taking over managing the store as of December 27th.

58. Crippen sent communication to one of co-employees inquiring whether Ms. Valliere had returned her set of Somersworth store keys.

59. Mr. Delafontaine acted in his new role in the Somersworth store as its Store Manager.

60. These events caused Ms. Valliere emotional and physical illness such that she notified the Company of her need to take PTO/Sick time.

61. On January 8, 2020 Ms. Valliere attempted again to return to work.

62. She did not know where to report.

63. Delafontaine was the Somersworth store manager and she did not accept the transfer to Concord or Derry.

64. She was advised to report to the Somersworth store.

65. The next day she learned that the Company terminated Crippen's employment.

66. Upon information and belief, Crippen texted at least one other Company employee stating that he was terminated due to "the Tina thing."

67. This was a reference to his discrimination, retaliation, and termination of Ms. Valliere's employment.

### *Respondeat Superior*

68. All action or inaction of employees or agents herein identified was within the course and scope of their employment.

69. All action or inaction of employees or agents herein identified occurred because the defendant placed these individuals into positions of power and authority which positions they used to discriminate and retaliate against Ms. Valliere.

70. The defendant provided the means and/or resources to the employees or agents herein identified which they used to discriminate and retaliate against Ms. Valliere.

71. The defendant is liable for the claims that arise because of the conduct alleged herein through the principle of *Respondeat Superior*.

### *Direct and Proximate Cause of Harm*

72. As a direct and proximate cause of the foregoing Ms. Valliere has suffered and will continue to suffer injury and harm for which she is entitled to compensation by the defendant.

### *Administrative Exhaustion*

73. Ms. Valliere filed her claim in the New Hampshire Human Rights Commission on December 13, 2019.

74. On June 26, 2020, after 180 days passed, she notified the Commission that pursuant N.H. Hum. 203.01 she was removing the case to file claims in Court.

## LEGAL CLAIMS

### COUNT I
### DISCRIMINATION BASED ON AGE
### ADEA (29 U.S.C. § 621 et seq.) AND RSA 354-A

75. Ms. Valliere incorporates by reference all allegations within this Complaint.

76. Ms. Valliere is a member of a protected age group pursuant to both the Age Discrimination in Employment Act because she was, at the time of the identified conduct, 40 years old or older, and RSA 354-A which does not have an age requirement.

77. Because of her age she was subjected to (a) a hostile work environment, (b) retaliation, and (c) disparate wages.

78. In particular, she was denied advancement and/or promotion to a position for which she was qualified which position the defendant gave to a substantially younger employee. She was subjected to changes to the terms and conditions of her employment including transfer to a less desirable position and/or one that had less room for advancement.  Her work environment was hostile in that it was permeated with discriminatory intimidation, ridicule, and insult that was objectively and subjectively severe or pervasive to alter the conditions of her employment that created an abusive working environment   She was constructively discharged.

79. Age was both a determinative factor in the defendant's action(s) and a but-for cause of discrimination manifested by the differential treatment and the adverse employment outcome.

80. The defendant's replacement of her with a substantially younger male employee(s) shows a continuing need for the services that she had been rendering.

81. As a direct and proximate result of the foregoing, Ms. Valliere suffered damages.

82. She demands judgment against defendant including, but not limited, back pay, front pay, compensatory damages, enhanced compensatory damages, punitive damages (as applicable), and attorney's fees, any and all other damages to which he is entitled including all interest all of which is within the jurisdictional limit of this Court.

## COUNT II

**DISCRIMINATION BASED ON SEX (GENDER)**
**TITLE VII and RSA 354-A**

83. Ms. Valliere incorporates by reference all allegations within this Complaint.

84. As identified herein, during the course of Ms. Valliere's employment, the Defendant, by and through its agents and employees, discriminated against the Ms. Valliere in the terms, conditions, and privileges of employment in various ways because of her sex.

85. Ms. Valliere is a member of a protected class.

86. She met her employer's expectations for job performance.

87. She suffered adverse employment because of her sex with respect to compensation including, but not limited to, denial of the opportunity to apply for the same job openings as male employees, denial of promotion or advancement given to less-qualified and less-experienced male employees, being subjected to a work environment that was objectively and subjectively intimidating and hostile to women, and being retaliated against for reporting safety violations that violated company policy.

88. The Defendant also treated similarly situated males substantially different from Ms. Valliere including, but not limited to, paying male employees more for the same or similar job responsibilities and titles, promoting male employees to positions that were not posted in accordance with Company policy, allowing male employees to create and foster a work environment that was intimidating and hostile to women, dismissing Ms. Valliere and/or her

9

concerns regarding safety of employees, replacing Ms. Valliere with a male employee who had substantially less experience and qualifications for the position, and retaliating against her for reporting safety violations that violated company policy.

89. The above described unwelcome sex-based discrimination created both objectively and subjectively an intimidating, oppressive, hostile and offensive work environment that interfered with Ms. Valliere's emotional and physical well-being.

90. As a proximate and direct result of the sex-based discrimination perpetrated by defendant's employees and agents, and perpetuated by the Company's failure to protect Ms. Valliere from such discrimination, Ms. Valliere suffered and continues to suffer physical and emotional harm.  This includes, but is not limited to, depression, anxiety, mental anguish, severe distress, severe disappointment, severe anger, severe resentment, severe embarrassment, severe grief, severe indignation, severe shame, severe despair, tremendous public humiliation, physical conditions arising from stress, and exacerbation of physical ailments and conditions.

91. Defendant through its employees, agents, and/or its supervisors failed to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures to act of its agents or employees as described above.

92. Defendant failed to take all reasonable and necessary steps to eliminate sex-based discrimination from the workplace and to prevent it from occurring.

93. Ms. Valliere is entitled to and hereby demands all damages available to her by statute and otherwise for this claim including, but not limited to, compensatory, enhanced compensatory damages, punitive damages (as applicable), lost wages, back pay, front pay, attorney's fees, costs, any and all other damages to which she is entitled including all interest all of which is within the jurisdictional limit of this Court.

## COUNT III

## RETALIATION
## ADEA, TITLE VII and RSA 354-A

94.     Ms. Valliere incorporates by reference all allegations within this Complaint.

95.     The defendant' actions and the actions legally attributable to it because it was conduct by direct and indirect supervisory personnel caused the workplace to be permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment that plaintiff reasonably believed to be in violation of Title VII and RSA 354-A.

96.     As identified herein, Ms. Valliere engaged in protected activity under Title VII and RSA 354-A by identifying potential safety violations to HR, identifying age discrimination to her District Manager and HR, identifying disparity in wages based on sex, objecting to transfer of her position, filing a Charge with the New Hampshire Human Rights Commission, and as otherwise identified herein.

97.     Thereafter and as herein identified the defendant through its employees and agents retaliated against Ms. Valliere by, inter alia, subjecting her to additional and ongoing harassment, altering her job responsibilities, denying her a promotion/advancement, altering her reporting structure, subjecting her to changes in the terms and conditions of her employment including transfer to a less desirable position and/or one that had less room for advancement, advising her that if she did not accept a transfer to a position that required an approximately 100 mile commute she would be terminated, subjecting her to company-wide humiliation, and making her work environment objectively and subjectively unreasonable and intolerable.

98. This retaliatory conduct was causally connected to Ms. Valliere engaging in protected activity under Title VII and RSA 354-A and was proximately caused by both her age and sex.

99. The actions herein identified could well dissuade a reasonable worker from making or supporting a charge of discrimination.

100. As a proximate and direct result of the retaliation perpetrated by defendant's employees and agents, and perpetuated by the Company's failure to protect Ms. Valliere from it, Ms. Valliere suffered and continues to suffer physical and emotional harm. This includes, but is not limited to, depression, anxiety, mental anguish, severe distress, severe disappointment, severe anger, severe resentment, severe embarrassment, severe grief, severe indignation, severe shame, severe despair, tremendous public humiliation, physical conditions arising from stress, and exacerbation of physical ailments and conditions.

101. Ms. Valliere is entitled to and hereby demands all damages available to her by statute and otherwise for this claim including, but not limited to, compensatory, enhanced compensatory damages, punitive damages (as applicable), lost wages, back pay, front pay, attorney's fees, costs, any and all other damages to which she is entitled including all interest all of which is within the jurisdictional limit of this Court.

## COUNT IV
## WHISTLEBLOWER CLAIM RSA 275-E

102. The plaintiff incorporates by reference all allegations within this Complaint.

103. Ms. Valliere engaged in activity protected by the Whistleblower Statute when she made numerous good faith reports that she had reasonable cause to believe were a violation of federal and state law. These instances included, but were not limited to, the presences and required remediation of asbestos tile in the workplace.

104.	Thereafter, Ms. Valliere was subjected to action that would dissuade a reasonable worker from reporting the legal violations when defendant took adverse employment actions against her leading to the termination of her employment.

105.	There was a causal connection between Ms. Valliere's protected activity and the adverse employment action.

106.	As a direct and proximate result of the foregoing, Ms. Valliere suffered damages and injury.

107.	Ms. Valliere demands judgment against defendant for all available damages by statute and common law including, but not limited to, pain and suffering, compensatory and enhanced compensatory damages, lost wages, back pay, front pay, attorney's fees, costs, any and all other damages to which he is entitled including all interest all of which is within the jurisdictional limit of this Court.

## COUNT V

### WRONGFUL TERMINATION/CONSTRUCTIVE DISCHARGE

108.	The plaintiff incorporates by reference all allegations within this Complaint.

109.	Defendant employed Ms. Valliere who was an at will employee.

110.	At all times during her employment with defendant, Ms. Valliere performed her duties with the utmost diligence and competence.

111.	Ms. Valliere engaged in an act that that public policy encourages or refused to do an act that public policy condemns this includes, but is not limited to, identifying potential safety violations, identifying age discrimination, identifying disparity in wages based on sex, objecting to transfer of her position, and as otherwise identified herein.

112. Thereafter, defendant retaliated against plaintiff by denying her the opportunity to apply for available positions, denying her advancement, changing her job position, and directing that she either accept a less desirable position or be terminated.

113. The facts alleged herein resulted in Ms. Valliere's working conditions being so difficult and intolerable that a reasonable person subjected to these conditions would feel forced to resign.  The working conditions were subjectively intolerable to Ms. Valliere.

114. Bad faith, malice, and/or retaliation motivated the defendant's actions.

115. As a direct and proximate result of the foregoing, Ms. Valliere suffered injury and damages.

116. Ms. Valliere demands and is entitled to all available damages based upon the foregoing facts arising at common law or by statute including, but not limited to, general tort damages, pain and suffering, back pay, front pay, compensatory, enhanced compensatory, consequential, incidental, and attorneys fees and costs all within the jurisdictional limits of this Court.

117. Plaintiff demands judgment against defendant, including, but not limited to compensatory and enhanced compensatory damages, lost wages, back pay, front pay, attorney's fees, costs, any and all other damages to which he is entitled including all interest all of which is within the jurisdictional limit of this Co

### *Jury Demand*

118.   Plaintiff demands a jury trial on all claims so triable.

Respectfully submitted,

TINA L. VALLIERE

By her attorneys,

SHERMAN LAW, PLLC

Dated:  9/23/2020

/s/ John P. Sherman
John P. Sherman, Bar No. 12536
Sherman Law, PLLC
111 Bow Street, Unit #2
Portsmouth, NH  03801
(603) 570-4837
jsherman@johnshermanlaw.com